Our next case on the call of the docket is agenda number 8, case number 113986, People v. Aaron Jackson. Counsel for the appellant, please proceed. Thank you, Your Honor, and may it please the court, my name is Cliff Berlow. I'm an assistant attorney general, and I'm here on behalf of the people of the state of Illinois and the Illinois Secretary of State. When the defendant in this case, Aaron Jackson, applied for an Illinois driver's license, he answered no to the following question. Is your driver's license or privilege to obtain a license suspended, revoked, canceled, or refused by any state under this or any name? That wasn't true. In fact, since he pled guilty in 1997 to driving under the influence of alcohol, the defendant had been prohibited from driving. What's more, only one year after the suspension of his driving privileges, the defendant was arrested and charged with driving while his driving privileges were suspended. Nevertheless, because this inaccuracy was not detected, the Illinois Secretary of State's office granted the defendant's application for a driver's license. This case arises out of an event that took place several years after that. The defendant, at a routine traffic stop, was identified to have been driving. He was then charged with driving while his driving privileges were suspended. And so the fundamental issue in this case is whether it violates the due process clauses of the Illinois and federal constitutions to prevent the defendant from arguing that he lacked a criminal purpose by driving on an Illinois highway and to instead impose absolute liability for driving on a suspended license. The circuit court here held that it does. That decision was wrong and this court should reverse it. And it's wrong because the General Assembly simply did not go beyond any of the limitations that have been identified by this court or the United States Supreme Court for when it may exercise its discretion to impose absolute liability. Moreover, there is nothing about the driver's license the defendant obtained following his inaccurate application that changes that constitutional analysis. And so I think there are at least four limitations that have been identified by the federal court system and this court for when absolute liability is improper as a matter of law. I think it's common ground between the parties that two of those limitations are not at issue here. First, this is not a circumstance in which the General Assembly has eliminated the requirement of mens rea from a crime that would have been an offense at common law. And second, this is not a case that involves wholly innocent conduct. And I want to be clear about what I mean when I say wholly innocent conduct. Wholly innocent conduct as this court has defined it most recently in Hollins but also in Carpenter and in Madrigal is conduct that is not germane to the legislative purpose that led to the imposition of absolute liability. And I don't think there can be any reasonable argument here that prohibiting individuals who are not legally competent to drive goes beyond the legislative purpose of creating a statute criminalizing driving while your driving privileges are suspended. And so that brings us to the other two limitations. This is not a, this, one of them is there is a due process limit on the extent of criminal penalties that can be imposed through an absolute liability statute. But this case certainly does not trigger that concern. As this court made clear in People Against Molnar, anything as high as a class four felony is not an unconstitutionally severe penalty. In this case, the driving with a suspended license statute is a class A misdemeanor most of the time. And as this court made clear in Lucas, there is a sentence enhancement after that misdemeanor offense has been proven based on the circumstances that led to the suspension. But based upon Molnar and the United States Supreme Court's decision in Staples against the United States, I think it's very clear that the mere fact that there is a potential sentencing enhancement to a class four felony does not trigger constitutional infirmity. And that then brings us to what I think is the most disputed element of this case, which is whether this statute is a legitimate public welfare or public safety offense. And what we mean by a public welfare or public safety offense is exactly what the United States Supreme Court and this court has affirmed going all the way back to Justice Jackson's opinion in Morrissette against the United States. It is an offense that is designed where there is a high probability of potential harm, regardless of the intent of the wrongdoer. And whether the harm occurs or not is a matter of sheer fortuity and, to some extent, luck. And that is precisely what the law prohibiting driving with a suspended driver's license is. It is a law that is designed to prevent the probability of harm that exists any time an incompetent driver gets on the road, gets on an Illinois road or highway. And what the touchstone, at least based upon both Morrissette and then in Lambert against California, the touchstone for when this is appropriate is the concept of notice. And I want to be clear that the term notice is used in a very loose fashion throughout this case, and I think it's at the core of the circuit court's misunderstanding here. There is actual notice, which is what the defendant is arguing that he lacked in this case because he had obtained a driver's license through his own misrepresentation. There is statutory notice under the driver suspension law, which requires that notice be mailed to the last known address of anyone who has their driving privilege suspended. And then there is constitutional notice, as the United States Supreme Court has identified it and as this Court has identified it. And that is that there is a settled expectation of regulation over an activity, and such that an ordinary person of reasonable intelligence and experience would expect that that activity or in the case of possession cases that that particular item would be regulated. And we clearly have that here. It is hardly a secret that driving is a highly regulated activity. It certainly wasn't a secret to the defendant in this case. He went to the trouble of applying for a driver's license. So it seems very clear that the defendant had all of the constitutional notice he was required to have in order to recognize that he could be engaging in potentially illegal activity. And that is all that the federal constitution and this state's constitution require. Regarding the defendant really builds his case, although I'm somewhat perplexed as to the precise theory regarding this issue, but builds his case around this driver's license that he obtained through this inaccurate application. And it seems to me that there are two ways in which the defendant could mean to rely on the driver's license. The first would be to argue that that driver's license had the effect of restoring his driving privileges in Illinois. If our burden under the driving with a suspended driver's license statute is to prove beyond a reasonable doubt two things, that he drove on an Illinois highway and that at the time he drove on an Illinois highway that his driving privileges were suspended. The defendant could potentially be arguing here that we can't meet our burden on that second element. But our inability to meet our burden on an element of the crime is not a basis for declaring the statute unconstitutional. And so I think it's common ground that to the extent that the defendant wants to rely on this driver's license, he's permitted to do so as a defense under that element of the statute. Ultimately, I don't think it's a terribly effective defense for the simple reason that, as this Court made clear in People Against Turner, his driving privileges couldn't have been restored based upon a driver's license application that didn't disclose that his driving privileges were revoked at the time he was driving on an Illinois highway.  The second argument he could be meaning to make is that this driver's license effectively negated his constitutional notice. And I think that that falls short for a number of reasons. First, as a practical matter, the defendant here did have notice. And he had all the notice he could reasonably expect under the statute because the suspension of his driver's license was sent to his last known address. That's all that Illinois law requires. And second, if there was any ambiguity at that point, I certainly think it was removed when only one year after the suspension, he was arrested and charged and subsequently convicted of driving with a suspended driver's license. So certainly the defendant had to have had notice that he was submitting an inaccurate application. His defense then would simply amount to, I forgot or I didn't understand. And I submit that as a due process matter, that simply cannot be an adequate defense. It would simply thwart the entire purpose behind making driving with a suspended driver's license an absolute liability offense. In addition, I want to be clear here that the defendant is in essence arguing that he should be bade better off because he submitted an inaccurate driver's license application and was essentially able to persuade the state of Illinois to give him a driver's license. It cannot be the case that as a constitutional matter, you are better off misrepresenting a fact to the state than you are accurately representing to the state that your driving privileges were revoked and then not getting a driver's license. That isn't what the due process clauses of either the state or the federal constitutions requires, and I would urge this court not to embrace such a standard. And so it seems to me that the circuit court here committed a fundamental error by declaring the driving with a suspended driver's license statute unconstitutional here and dismissing the indictment at the outset of the proceedings. And unless there are any specific questions from this court at this time, I would just simply urge the court to recognize the infirmity of the constitutional holding by the circuit court and remand this case for trial. Question. What's your understanding of the record? Was it found unconstitutional under the state or the federal constitution? Is that clear in the record? Chief Justice Kilbride, it's not clear under the record. The court did cite both federal and state constitutional principles. But I think that this court's decision in Molnar's is relatively clear, that the state constitution is in lockstep with the federal constitution when it comes to the due process limits or the limit on absolute liability imposed by the due process clauses. So I don't think that there's a great deal of ambiguity. I don't think that whatever ambiguity exists there, I don't think it's terribly consequential. And as best I understand it, the ruling is unconstitutional, a quote, as applied, close quote. That is. It's not a facial strike of the statute. Chief Justice Kilbride, that is what the circuit court, that's what the circuit court said it was doing in this case. I think we might quibble whether or not this truly was an as-applied holding because the substance of the decision is that the due process clause requires or entitles a defendant to proof of an element of mens rea. And it's difficult to conceive of why some people would have a constitutional right to proof of a particular element while others would not. I'm certainly not aware of any other case in which that's been declared to be a constitutional principle. Thank you. I don't recall whether you covered this or not, but in 2006, didn't the defendant use a different variation of his name? That is true, Justice Freeman. I don't think that's certainly, it contributes to the notion that this was an inaccurate driver's license application, but I don't think that that is the most critical misrepresentation here. The most critical... The defendant established that he knew the state of his driving record and this was a way to get around it. Well, it certainly contributes to that notion, Justice Freeman. I think by misrepresenting that his driving privileges were suspended, that had a profoundly consequential effect on how his driver's license application was reviewed here. There are two parallel paths for obtaining a driver's license. One involves applying for the first time. This is what every 16-, 17-, 18-year-old in the state goes through when they get a driver's license. It involves a drive test, an eye test, and a written test. That is the process that the defendant went through here in order to get a driver's license. There is a second process when your driving privileges have been previously suspended. That requires a much more onerous examination of your driver competence. And in a case such as this, where driving privileges were suspended based upon an alcohol-related offense, that involves an investigation prior to a hearing before the Secretary of State's office into any substance abuse issues, alcohol, drug use, that sort of manner of thing. So the defendant essentially evaded the only means under Illinois law for getting your driving privileges reinstated as a result of submitting a driver's license application that didn't place him into the pile that would have forced him to go through this more onerous examination. So the Circuit Court's finding of unconstitutionality was premised on the fact that the defendant did not know his driver's license was suspended at the time of the offense. If the facts would show that he did know, need we answer the constitutional question? If the court concluded from the record that the defendant here did know, I don't think that the court would necessarily have to address the constitutional question. It could simply remand on the grounds that this is an improper application of a constitutional principle. I would urge the court not to go down that road here, because I think that this does require a degree of clarity here. Whether the defendant knew or not that his driving privileges were suspended, he still has the obligation to submit an accurate driver's license application, and he is still prohibited from driving on the highways of the state of Illinois. Now, to the extent that the defendant wants to offer some sort of an estoppel argument against the state, I suppose he's free to do so as an affirmative defense to a jury, but that doesn't rise to the level of constitutional imperative that would require the dismissal of the indictment at the outset of proceedings. If there are no additional questions, I'll rest for the time being. Thank you. Thank you, Your Honor. Counsel for the appellee. May it please the Court, my name is Dan Evers. I'm an attorney with the State Appellate Defender in Mount Vernon, Illinois, representing Mr. Jackson in this case. As this Court is aware, Mr. Jackson was issued a driver's license by the Illinois Secretary of State on February 24, 2006. In getting that license, he used his correct name, his correct date of birth, and his correct Social Security number. Admittedly, he answered no to the question that the State just read, and the State points out that this would be a misrepresentation, an inaccuracy. The question is whether this was a knowing fraud. I believe that is a jury question. I don't think that the State really fully comes to terms with what that means in terms of that is a jury question. Because under the State's line of analysis, all they have to do is present the Secretary of State's order, the administrative order, suspending the driver's license that they administratively created back when my client was 15 years old. Is this an estoppel argument? I'm sorry, what? Is this an estoppel argument, essentially? I don't believe I have ever used the word estoppel in terms of this. This is a defense. The fact that he got a license when his license was revoked or suspended should prevent the State from charging him with driving on a suspended or revoked license. I believe that it should be a viable defense before a jury. And that simply the Secretary of State saying that this is a fraudulent act does not make it a fraudulent act. I don't think they said it's fraud. They said it's inaccurate. Is there a difference? In their brief, they say it's inaccurate. And I point out that that is a movement away from what they argued in the circuit court. And in the circuit court, they certainly argued that this was a fraudulent act. And they relied upon this court's decision in People v. Turner in which this court ruled that obtaining a driver's license by fraud cannot be a defense to driving while license suspended. And the very important point of Turner is that that defense was presented to the jury and rejected. And in Turner, this court upheld the jury verdict finding that there was this fraudulent act and it was much more blatant and it was much more knowing in Turner than in this case. In Turner, he used a different name. But he also testified that he never received notice as a name of Frank Turner of his suspension and that he always used Carrie Sharp for his driver's license application. Well, what I understand them to argue now, specifically from the reply brief, is that it's really inconsequential. That the license is irrelevant and admissible as the defendant's, irrelevant whether it's admissible as to the mental state because driving with a suspended license is an absolute. It's an absolute, it's a very circular loop of logic on that. In the reply brief, the state says it would be admissible, that it would be something that could be presented to the jury. But then they do not explain how the jury is going to be evaluating that and how that is a defense. And basically, that defense is the same as in a perjury prosecution. They would have to show that he knowingly put down no to commit that fraud. You're not saying that he didn't know, are you? I don't believe that the record can show either way on this. I believe that it is very possible that he did not understand, did not know, when he put down the answer no to that question, that that was untruthful or that was wrong. When the state administratively suspended his driver's license, he was 15 years old. He had never been given a driver's license. Didn't he subsequently, I recall from the record, didn't he subsequently get charged again not too soon after that? Yes, Your Honor. And they said that he was driving on a suspended license? Yes. And so how could he not know he was driving on a suspended license? All I can say is that 16-year-olds are not very bright sometimes and do not understand that over the passage of time, that his knowledge of that his license was suspended and his privilege to obtain the license was suspended. There's a very big legal difference between the privilege and the actual license. Again, he never went in and asked for a driver's license. He was 15. The Secretary of State administratively did that. The Secretary of State administratively issued this driver's license number to him. And so what he knows and what he thinks is occurring when he applies in 2006 is a very open question. That's why I'm having difficulty understanding your argument. I mean, how do you address the fact? I know that you parroted what they said. They said it doesn't matter. If he knows, he doesn't know, it doesn't matter. Suspended license, absolute liability. We don't care what he knows or doesn't know. We don't care when he signed up whether it was fraudulent or not fraudulent. That certainly is the State's argument. Right. But you seem, at least in the first portion of this argument, to be talking about what he knew or didn't know. And what he knows goes to whether he can rely upon this driver's license. And it would be fundamentally unfair to have him convicted of this offense when he has issued a driver's license and is not knowingly committing that offense. So basically, you're saying there is a mens rea required. There would have to be, apparently, everybody has assumed for years and years, and it's an assumption, that there is no mens rea requirement for this very unusual factual circumstance. And it is a very unusual factual circumstance. Counsel, you're getting close. You said fundamentally unfair, so we're getting close to a constitutional argument. But that's my question. Just what is the constitutional argument here? Some of the questions that were asked was, is this under the State Constitution, the United States Constitution? Is this applied or a facial challenge? I'm not really clear exactly what is your constitutional argument here. The constitutional argument would be that it's fundamentally unfair under both the due process and Illinois Constitution and the United States Constitution to convict someone of driving while license suspended when they actually believe that they have a valid driver's license that was issued by the State of Illinois. And he had that driver's license. Now, whether he knows. Let's go back to facially reply. Are you saying the statute itself is infirm, constitutionally infirm? As applied to him, it would have to be as applied to anybody in his circumstance. It would have to be unconstitutional, although your honors would be able to read into the statute this requirement simply because your honors construe statutes all the time. And you could say that this is a requirement that we just have not been faced with or recognized before now. But it is a very circular loop of logic for the state. It's a very convenient one for them, too, because it makes things very simple. The simple part is that if they were prosecuting him for perjury and answering no to the question that they read, and it's a very, as I said, it's very long and detailed, they would have to prove that he knowingly answered no, knowing it to be false. I want your honors to look at that and say this is basically the same thing that we have to have for driving while licensed suspended in this situation because it would just be fundamentally unfair to convict him of this when they're not bothering to charge him with perjury, not bothering to convict him of perjury, but going the simple route and just saying that we don't have to prove that because it's an absolute liability offense. When I picked up the state's brief and looked at the trial court's argument, it seemed a pretty simple question of whether or not 6-303 was constitutional or not. And the trial court said it was unconstitutional as applied, but I'm not sure exactly what that meant. But when I pick up your brief, it talks completely about what you're talking about now. The state should have charged him with a fraudulent act and he'd get a jury trial on that. What's your argument with regard to simply the fact that he was charged with driving while licensed suspended that has been held to be an absolute liability offense? We would have to hold that it is not an absolute liability offense in order to uphold the trial court. Is that correct? I believe that your honors have implicitly decided that it's not an absolute liability offense when you go back to Turner. Now the state in its reply brief says that you have never addressed the question of an accidental or not a knowing misrepresentation on the driver's license application. But in Turner, again, you had to state that it was the fraudulent act that made that driver's license not a defense to driving while licensed suspended because it was suspended earlier. And it's that fraudulent act that is the key and most important part for this court to decide. So if this is not an absolute liability statute, then are you saying there's no constitutional issue here? Right. If it is an absolute liability statute. If this court were to follow my line of analysis, you could say that there is this knowing requirement and that it has to be done because it is a constitutional problem. So that's my next question. If it is, in fact, an absolute liability statute, then you're saying it's unconstitutional. Is that right? Then it's unconstitutional. And that's what the trial court found, right? As applied. Okay. So can you explain to me then if it's, in fact, an absolute liability statute, why it is unconstitutional? That seems to be the issue. Because, again, it's an unknowing act in which the state of Illinois, the Secretary of State, has given him what he believes to be a valid driver's license. And the circular rule. Why does that make it unconstitutional? Because it would be fundamentally unfair to allow the state to issue a valid driver's license, what is believed to be a valid driver's license, and have the Secretary of State make the decision that's a fraudulent act. Well, back to the state. As I understand their argument, they say that the 2006 license would be absolutely admissible and relevant on the question of whether a defendant possessed a valid driver's license at the time of the offense. So all we'd be ruling on is whether or not the trial court was right in saying there was a mens rea requirement with respect to this offense. It would still go back, right? And you could say the license really wasn't revoked. I had this valid driver's license from 06. And what is the jury instructed on? What is the jury instructed? What is the jury instructed upon? I'll wait until the trial court instructs them, and then we'll see whether it was a proper instruction or not. But the issue before us is whether or not there's constitutional infirmity in not having a mens rea requirement with respect to the offense charged. Right? In terms of what the jury is to be instructed upon, I think that is very important and at the very core of what the circuit court was struggling with. The question before us is there's a finding by the trial court as applied or on its face, depending on how you want to look at how it's framed and what the trial judge is really saying, and whether or not he was correct in finding a constitutional infirmity in this case. And the constitutional infirmity would be that the appellate court and the Illinois Supreme Court had never held there to be a mens rea requirement, and I have to admit, except in a later appellate court decision interpreting Turner involving the application for temporary driver's license, the court found that it would be wrong to impose a conviction when it was a negligent act by the driver's license facility in the application process. That was Paproth cited in both of our briefs. But again, it gets to the circuit court struggle of what is a jury to be instructed upon, and the instructions would just say it does not matter at all what this driver's license issued in 2006 means. It means nothing because the Secretary of State has determined that there was a fraudulent act. It seems to me that, following up with your argument and the State's, that if this went to trial, the State has to prove he was driving at a time when the license was suspended. And your defense is his license was not suspended because he had one. The jury would receive a propositions instruction as to if the State proved those charges. There's nothing here about the fraudulent obtaining in that simple case, is there? I'm sorry, I misunderstood what the third proposition would be in the issue. I think he just said two. Yes. Driving. Driving and the notice of suspension. Not a notice when his license was suspended. The question would be. That would be the question under the State's theory, yes. And I would suggest that that's just wrong. And so you're saying there has to be a notice requirement under 6303 and knowledge by the defendant and therefore absolute liability is unconstitutional. Well, in terms of whether there has to be notice for other people, I'm not dealing with whether they never got notice. The State did not send them notice and just administratively suspended the license. Those aren't the questions before me. The question before this court that I'm dealing with is that he was issued what he can say I thought was a valid driver's license. And to convict him of a class four felony, punishable by up to six years imprisonment, is fundamentally unfair if he is doing that not knowingly and not fraudulently. He's just doing that because he is not very bright and was trying to follow the procedures of getting a driver's license. He went to them. He gave them his correct name. He gave them his correct date of birth. A simple computer search of their records would have popped up an Aaron A. Jackson. That could have been dealt with. He paid them the amount of money. He took the test. He was doing everything that he was required to do. He thought. And that is for the jury to determine whether if in fact he was trying to commit some kind of fraud. Now the State, the Secretary of State, administratively canceled that second driver's license from 2006. And in its notice to Mr. Jackson said that this license is no good on this future date. Which kind of also makes you wonder what that means. And it means that even that. Is that part of the record? Yes. That's in most of the exhibits put into the record by the State. If there are no other questions, we thank you, Your Honors. Thank you, Mr. Evers. Rebuttal, please. Thank you, Chief Justice Kilbride. I want to begin by revisiting Justice Freeman's question to me about whether this court could rule on a narrower ground and say that regardless of what the law is, this individual had notice. I think the confusion in the defendant's argument here illustrates why clarity is needed here. And I think what we need is clarity regarding the meaning of this court's decision in Turner and the nature of the elements, I'm somewhat surprised to say that, but the nature of the elements of this particular offense. If you look at Turner, the defendant's argument seems to be premised upon this notion that Turner is limited to the circumstance in which there is a fraudulent application. I would submit that if you review the actual reasoning of Turner, you'll find that that case is not dependent upon fraud. The word fraud is used once in that opinion. It is used in the second to last or the last sentence of the opinion. But the reasoning behind Turner is that an individual cannot rely upon a driver's license that was obtained through some sort of inaccuracy because it prevented that individual from going through the only statutory mechanism that allows that individual to have their driving privileges reinstated. And so the reasoning is absolutely just as true where there is a deliberate fraud as when there is a simple oversight. The law constitutionally places the onus on the individual to make sure that their driving privileges are valid when they drive. And the defendant's argument seizing upon the use of the word fraudulent in Turner, I think essentially disregards the reasoning and focuses in upon a single adjective. Second, I want to focus in just briefly on the questions that you asked, Justice Tice, and you asked, Justice Thomas, about the theory of unconstitutionality being offered here by the defendant. And the defendant's argument here seems to be that it is fundamentally unfair, those are his words and he used them several times, to impose absolute liability where the state gave him a driver's license. Fundamentally unfair is not the standard here. The standard here under the due process clauses, going all the way back to Justice Jackson in Morset, to Justice Douglas in Lambert, is the concept of notice. Notice that there is a settled expectation of regulation over a particular act. That's what the Constitution requires. Fundamental fairness is certainly a notion that appears throughout the analysis of the due process clause, but when it comes to absolute liability, the specific permutation of what constitutes fundamental fairness is that notion of notice, that an individual would understand that they are engaged in a regulated activity. And that's why it was constitutional for this court, that was constitutional for the Illinois General Assembly, to impose absolute liability for the registration of sex offenders. And why the United States Supreme Court said it is constitutional to impose absolute liability for possession of illegal narcotics, possession of the selling or shipping of misbranded or adulterated drugs, regardless of whether you knew that they were misbranded or adulterated. The possession of sulfuric acid, even when you thought it was water. None of that matters. What matters is that an individual of reasonable and ordinary intelligence would understand that the action they are engaged in is a potentially regulated action, and it places the onus on the individual to identify whether they have engaged in an illegal action. In terms of Justice Carmier, you asked about the defendant's statutory argument. And he said, I think in a moment of candor, said that this court has never held that there is a mens rea element. And I want to be clear, as a matter of first principles, that's absolutely correct. The driving with a suspended driver's license statute does not include a mens rea element in its plain text. The surrounding text repeatedly uses word terms like knowingly and with intent. And so it is striking that the General Assembly omitted a mens rea requirement for this offense, and in large measure, this offense only. What's more, this is a statute that has been remended over 20 times since it was put into the Motor Vehicle Code in 1969, and never once did the General Assembly, despite an unbroken line of precedence holding that this is an absolute liability offense, never once did the General Assembly even consider offering an amendment to the statute that would have added an express mens rea requirement. And Justice Garmon, you asked about whether or not this was actually in substance in the Staple argument. And I would submit to you that that's really what the defendant's argument is here. The defendant's argument here is really a defense, a statutory defense, not a constitutional one, but a statutory defense under Section 4-8 of the Criminal Code. And that defense, I would submit, is not going to be terribly effective here, but Section 4-8 lays out the general principle that ignorance of the law is no defense. But it does say that under certain circumstance where the state entity that is empowered to enforce a particular statute offers some sort of conclusive or definitive declaration as to the meaning of the law, that the individual may reasonably rely upon that representation. I don't think that defense will carry a great deal of weight here, because the state did not offer an interpretation of the law based upon all of the relevant facts. The state offered an interpretation of the law based upon the application that the defendant submitted. That application is simply inaccurate. And so the Secretary of State was in no position to give a definitive interpretation of the statute here, where it didn't know all of the relevant details that would have allowed it to make this sort of advisory opinion that could form the basis of the defense. But if the defendant wants to offer that defense, that's certainly his prerogative. But I don't think it rises to the level of a constitutional infirmity here. And lastly, Justice Thomas, I think you correctly identified all of the relevant and key considerations to our argument here. The defendant's intent and understanding is not a relevant consideration under the statute, and it is a constitutionally permissible circumstance that he's precluded from offering such a defense. If there are no other questions. Yes. On this, does the administrative scheme that's in the statute, not just what happens in the real world, but in the statute, in the brief says, you know, they created this license, and then they suspended it and sent notice to his last known address. That's correct, Chief Justice Kilgore. So what is the statutory purpose of sending notice out? How does that tie into the absolute liability concept? If it's not, I understand the argument of absolute liability, but is it not tempered with there has to be some kind of notice to the individual, which then means knowledge that, hey, my license is suspended? Well, I think there are two elements to your question. First, I think the reason that the notice requirement is included in the original suspension statute is that it's required to be there as a matter of federal constitutional law. In Bell v. Burson, which is a 1971 decision, the United States Supreme Court held that in order to have an effectual suspension of a driver's license, there must be a hearing and then there must be notice. It has been subsequently held by, I believe, every court that has examined this question, that mail notice is adequate to satisfy the due process requirements here. So there is not a constitutional requirement of individualized actual notice. There is simply a kind of a good faith standard, and mailing a notice to an individual's last known address would certainly satisfy that. And I think to hold otherwise would be deeply troubling, because it would simply allow any defendant to come into court with the defense, I never received notice. And it can't be that you can negate what is a valid public welfare and safety offense with, I forgot or I didn't check the mail that day. If there are no additional questions, I'm happy to rest on our brief and simply urge the court to reverse the decision of the circuit court. Thank you. Thank you. Case number 113986, People v. Aaron Jackson, is taken under advisement as agenda number eight. Mr. Berlow and Mr. Evers, we thank you for your arguments. You're excused.